UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERIE PAINTING & MAINTENANCE, INC.,

                    Plaintiff,

          v.                                              **DECISION AND ORDER**
                                                          09-CV-940S
ILLINOIS UNION INSURANCE COMPANY,

                    Defendant.

## I. INTRODUCTION

        Plaintiff, Erie Painting and Maintenance, Inc., ("Erie Painting"), brings this diversity

action seeking a declaration that its insurer, Illinois Union Insurance Company ("Illinois

Union"), is required to defend and indemnify it in an underlying action pending in New York

State court.

        Each party now moves for summary judgment, and those motions have produced

a torrent of further motions, including disputes about the admissibility of certain pieces of

evidence, page-length violations, the use (and font size) of footnotes, and the propriety of

sur-replies. All together, there are eight motions pending before this Court; in short, each

party's motion for summary judgment will be denied along with four of the remaining six

motions.

        Some preliminary matters can be addressed first, such as each party's motion to

strike the other's memoranda for violations of the Local Rules. (Docket Nos. 58, 62). In

contravention of Local Rule of Civil Procedure 7(a)(C), Erie Painting submitted a 23-page

reply brief, which Illinois Union moves to strike. A review of this brief, however, reveals that

it is excessively long mostly because it largely rehashes, sometimes verbatim, arguments

made in Erie Painting's original memorandum of law. Further, this Court finds that Illinois Union would not suffer undue prejudice if the memorandum were permitted because it has had sufficient opportunity to respond to the arguments made therein. Indeed, Illinois Union has submitted at least 60 pages of memorandum in support of its own arguments on summary judgment.

For its part, Erie Painting moves to strike Illinois Union's memoranda for excessive use of small-font footnotes. See L. R. Civ. P. 10(a)(1) ("[A]ll text and footnotes shall be in a font size of at least 12-point type . . . ."). This motion will also be denied. Courts have broad discretion in applying their local rules, Brown v. Board of Trustees of Building Services 32B-J Pension Fund, 392 F. Supp. 2d 434, 446 (E.D.N.Y. 2005), and this Court will deem the papers submitted in their present form.[1] The parties are, however, forewarned to scrupulously adhere to the Local Rules in all future submissions, or risk sanction.

Relatedly, Erie Painting's motion to file a sur-reply (Docket No. 67) will be denied, as this Court finds that it has had sufficient opportunity to present its arguments. See, e.g., Kapiti v. Kelly, No. 07 Civ. 3782 (RMB) (KNF), 2008 WL 754686, at * 1 n. 1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs" (internal quotation marks and citation omitted)).

---

[1] This renders moot Erie Painting's motion to submit an amended reply memorandum. (Docket No. 61.)

## II. BACKGROUND

A.    Facts[2]

At some point in the late summer of 2008, Illinois Union (through its broker, Colemont Insurance Brokers of Connecticut, LLC, ("Colemont")), issued to Erie Painting, (through Erie Painting's agent, Lawley Agency, LLC ("Lawley")), a general liability insurance policy. (Def.'s State., ¶ 1; Docket No. 44-1.)) The policy required Erie Painting to notify it of any claim "as soon as practicable." (Policy, § 4.2.a, attached as "Ex. A" to Kamoroff Decl.; Docket No. 44-5.) It is this policy that allegedly obligates Illinois Union to defend and indemnify Erie Painting in connection with a lawsuit commenced by the State of New York against Erie Painting – a lawsuit that has its origin in a September 18, 2008 accident.

On that day, while working at a job site owned by the State of New York along Route 8, Dimitrios Dovas, a seasonal employee of Erie Painting, a family-owned commercial painting contractor, climbed atop an Erie Painting truck, without utilizing a harness, to investigate an unusual noise emanating from the truck's hose. (Pl.'s State., ¶¶ 34, 62-64(a)-(b); Docket No. 45-1.) In the process, he lost his footing, fell to the ground, and hit several objects on the way. (Def.'s State., ¶ 34.) He was immediately rendered unconscious. (Id., ¶¶ 7; Docket No. 44-1; Pl.'s State., ¶ 64(f).)

He thereafter regained consciousness, and immediately refused to visit a hospital. But upon learning that he was unable to operate his own vehicle, informing his boss and

---

[2]This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s State." and "Def.'s State." respectively) to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

owner of Erie Painting – Markos Bahas – that his pain registered a 7 or 8 out of 10, and later reporting that his pain "was the highest it could be," his co-workers convinced him otherwise and escorted him to St. Luke's hospital. (Def.'s State., ¶¶ 15, 18, 19.) En route, Dovas informed Erie Painting Superintendent, Paul Gladwin, of the accident. (Id., ¶ 20.) And shortly after his arrival, Bahas visited and spoke with Dovas at the hospital. Erie Painting employees also prepared formal accident reports. (Id., ¶ 34.)

Dovas fell into a coma on his second day at St. Luke's. (Id., ¶ 22.) He remained unconscious for 10 days. (Id., ¶ 23.) During this time, Bahas provided cash and offered Davos' wife use of the company's credit card.[3]  (Pl.'s State., ¶ 64(k-l).)

Dovas eventually recovered from the coma, and was released from the hospital. He then struggled to pay his medical bills, and in late November, 2008, called Bahas and informed him of his pressing financial situation. (Id., ¶ 49.) Bahas sent a check in the amount of $9,235.00 to assist him. (Id., ¶ 50.) According to Bahas' testimony, these acts, along with a statement allegedly made by Davos' indicating that he did not intend to bring a lawsuit, led Bahas to believe that no litigation would result from the accident. (Id., ¶ 53.) But on December 18, 2008, Davos did file a lawsuit, not against Erie Painting, but against the State of New York, which had an agreement with Erie Painting requiring Erie Painting to defend and indemnify the State for claims arising out of work on the project. (Pl.'s State., ¶ 85; Def.'s State., ¶ 5.)

---

[3]The precise amount of cash is in dispute. Erie Painting claims it was $2,000, while Illinois Union claims that all but $350 of the $2,000 was paid to other employees. Although Illinois Union cites Davos' deposition in support of its contention, the relevant portion (i.e. the portion cited by Illinois Union) is omitted from the transcript that Illinois Union provided this Court. (See Def.'s Response to Pl.'s State., ¶ 64(l).)

Presumably anticipating a resultant suit against it pursuant to this agreement, on January 12, 2009, through Lawley, Erie Painting telefaxed Colemont, Illinois Union's broker, an "Acord General Liability Notice of Occurrence/Claim" form, detailing the Dovas accident. (Pl.'s State., ¶¶  85, 87; Def.'s State., ¶ 54.) Through its "Agency/Company Agreement" ("Agreement") with Illinois Union, Colemont was supposed to forward any notice-of-claim to Illinois Union. (Agreement, § II.B.1, attached as "Ex. G" to Pl.'s Mot. for Summ. J.; Docket No. 45-12.) But eight days later, on January 20, 2009, Lawley contacted Illinois Union and learned that Illinois Union was unaware of the claim. (Pl.'s State., ¶¶ 89-90.)  As a result, Colemont quickly emailed the notice-of-claim to Illinois Union that same day. (Pl.'s State., ¶ 91; Def.'s State., ¶ 55.)

Illinois Union disclaimed coverage for the Dovas claim 21 days later, on February 10, 2009, pointing to Erie Painting's late notice-of-claim as the principle reason for this decision. (Pl.'s State., ¶ 104; Disclaimer Letter, attached as "Ex. D" to Kamoroff Decl.) When New York State eventually filed suit against Erie Painting seeking a defense in connection with the Dovas suit, Erie Painting again sought coverage from Illinois Union. (Pl.'s State., ¶ 66.) Illinois Union again disclaimed. (Id.,¶ 67.)

This lawsuit followed.

**B.      Procedural History**

Originally filed in state court on October 9, 2009, Illinois Union removed the suit to this Court on November 2, 2009. (Docket No. 1.) Erie Painting then moved to remand the case back to state court (Docket No. 12), but the Honorable Leslie G. Foschio issued a

Report and Recommendation denying that motion (Docket No. 21) and this Court adopted that recommendation (Docket No. 22).

On January 16, 2012, after completion of discovery, Illinois Union moved for summary judgment. (Docket No. 44.) Erie Painting followed suit the next day. (Docket No. 45.) A litany of motions then followed: Illinois Union moved to strike the affidavit of Evie Steinkirchner and the fourth paragraph of the Deborah McMicking affidavit (Docket No. 50); in response, Erie Painting moved to supplement its Rule 26 disclosures and interrogatory answers (Docket No. 55); Illinois Union subsequently moved to strike Erie Painting's reply memorandum as violative of the Local Rules (Docket No. 58); Erie Painting answered by moving to file an amended reply memorandum and responded in kind with its own motion to strike all of Illinois Union's memoranda as violative of the Local Rules (Docket Nos. 61, 62); finally, Erie Painting moved to file a sur-reply, a supplemental Rule 56.1 statement, and an attorney declaration (Docket No. 67).

Briefing concluded on all these motions on April 20, 2012, at which time this Court took the motions under consideration.

## III.  DISCUSSION

### A.    Steinkirchner Affidavit

Although several of the pending motions have already been addressed, Illinois Union's motion to strike the affidavit of Evie Steinkirchner (Docket No. 50) remains.[4] (Affidavit attached as "Ex. E-1" to Pl.'s Mot. for Summ. J.; Docket No. 45-8.)

---

[4]Within this motion, Illinois Union also moves to strike paragraph four of the McMicking affidavit as improper expert testimony from a lay witness. This aspect of the motion is unopposed by Erie Painting and will be granted.

Erie Painting's admittedly failed to disclose Steinkirchner as witness in its Rule 26(a) disclosures. Under Rule 37(c)(1), if "a party fails to provide information . . . required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Illinois Union thus argues that the affidavit should be struck.

"Despite the mandatory language of Rule 37(c)(1)," however, "the Second Circuit has held that preclusion is a discretionary remedy." Pal v. N.Y. Univ., No. 06 Civ. 5892 (PAC)(FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008). A motion to strike can be denied even if the court finds that there is no substantial justification and the failure to disclose is not harmless. Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006).

But this Court need not employ that discretion, as it finds the failure to disclose Steinkirchner was harmless. Steinkirchner, an account manager at Erie Painting's insurance agency, testifies in a roughly 2-page affidavit that she approached Colemont to obtain an insurance policy for Erie Painting and that, as a result, Colemont secured a policy for Erie Painting from Illinois Union. This information, on which Erie Painting relies in arguing that Colemont was an actual or implied agent of Illinois Union, was well known to Illinois Union. On November 4, 2011, Erie Painting provided its answers to Illinois Union's interrogatories, including the following response to interrogatory number eight:

> Interrogatory No. 8: State the basis of Erie Painting's allegation that Colemont is an agent of Illinois Union, as alleged in paragraphs 17-21 of Erie Painting's complaint in this action.
>
> Response: Defendant communicated with the Lawley Agency, LLC exclusively through Colemont Insurance Brokers,

> including, but not limited to, the application and quoting process, payment of premium, requests for policy changes and/or amendments, delivery of insurance policies and endorsements, and correspondence and providing copies of insurance policies and endorsements and claim reporting to Colemont Insurance Brokers only. Colemont Insurance Brokers' employee John Murphy advised Lawley Agency, LLC that Colemont Insurance Brokers was a "contract agent" for defendant.

(Attached as "Ex. E" to Atwater Decl.; Docket No. 55-6.)

Illinois Union's knowledge of these facts is further evidenced in its own motion for summary judgment, in which it anticipates, and attempts to refute, Erie Painting's "agency" argument. (See Def.'s Br. in Supp. of Summ. J., at 22; Docket No. 44-4 ("It is expected that Erie Painting will argue that Lawley's notice to Colemont on January 12, 2009 was notice to Illinois Union.")).

The purpose of Rule 26 disclosures is "to prevent the practice of sandbagging of an opposing party with new evidence." Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Illinois Union does not argue that the Steinkirchner affidavit is "new evidence" or that the information contained therein took them by surprise. As such, this Court finds that the error was harmless and it will not invoke the "drastic remedy" of preclusion. See id. However, because this case will proceed past summary judgment, Illinois Union is granted leave to depose Steinkirchner if it is deemed necessary.

Accordingly, Erie Painting's motion to supplement its disclosures (Docket No. 55) is granted.

## B.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When the parties cross-move for summary judgment, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

9

**C.     Motions for Summary Judgment**

Buried beneath the tangential motion practice lie dueling motions for summary judgment, which concern the principles of agency law, an insured's duty to notify its insurer of a potential claim, and, conversely, an insurer's responsibility to notify its insured of its decision to disclaim coverage.

Under New York Insurance Law § 3420(d) and insurer must give notice of disclaimer of coverage "as soon as is reasonably possible." And under the Illinois Union and Erie Painting insurance agreement, Erie Painting is obligated to provide notice of any potential claim to Illinois Union "as soon as practicable." The summary judgment motions are largely dedicated to these issues of timing. Each party contends that the other's notification (Erie Painting's disclosure of the potential claim and Illinois Union's disclosure of its intent to disclaim coverage) was untimely and therefore inoperative. Each of those issues will be discussed below. Before those questions can be addressed, however, this Court must first address Erie Painting's contention that Colemont was an agent of Illinois Union.

Erie Painting concedes that if Illinois Union received notice of its claim on January 20, 2009 – the date that Illinois Union actually received it – Illinois Union's disclaimer would be timely. Erie Painting contends, however, that Illinois Union effectively received notice of its claim before that date, arguing that knowledge of the claim should be imputed to Illinois Union based on Erie Painting's notice to Colemont, its broker, on January 12, 2009. In short, Erie Painting argues that Colemont is Illinois Union's agent, and therefore, Illinois Union, as the principal, is deemed to have effectively received the notice when Colemont actually did. Calculating the elapsed time starting from this earlier date means that Illinois

Union took 29 days to provide notice of its disclaimer, which, according to Erie Painting, is too long as a matter of New York law.[5]

## 1. Agency

Both parties seemingly agree that notice to a broker does not typically constitute notice to the insurer because "a broker is normally the agent of the insured and notice to the ordinary insurance broker is not notice to the liability carrier." Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 442, 293 N.E.2d 76 (1972); see also Paul Developers, LLC v. Md. Cas. Ins. Co., 28 A.D.3d 443, 445, 816 N.Y.S.2d 75 (2d Dep't 2006) ("Notice to a broker cannot be treated as notice to the insurer since the broker is normally deemed to be the agent of the insured and not the carrier" (citations omitted)). Further, there is no dispute that according to the terms of the policy at issue, "all claims or Loss Notices related to this policy should be reported to [Illinois Union]." (Def.'s State., ¶ 2.)

But notification to an insurer's agent does constitute adequate notice to the insurer itself and, even where there is no actual authority, an agency relationship may arise from apparent authority. Therefore, Erie Painting's notice to Colemont "would have been legally sufficient if 'there were some evidence of . . . action on [Illinois Union's] part, or facts from which a general authority to represent [Illinois Union] may be inferred.'" Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 289 (2d Cir. 2003) (quoting U.S. Underwriters Ins. Co. v. Manhattan Demolition Co., 250 A.D.2d 600, 600, 672 N.Y.S.2d 384 (2d Dep't 1998)); see Cohen v. Utica First Ins. Co., 436 F. Supp. 2d 517, 527 (E.D.N.Y.2006). Significantly,

---

[5]There is no dispute that New York law governs this action.

"[a]uthority has been found where the agent's role 'went far beyond that of solicitor of the liability policy, including responsibilities such as collecting premiums, issuing the policy, and being designated as an 'agent or broker' for the insurer.'" U.S. Underwriters Ins. Co. v. Landau, 679 F. Supp. 2d 330, 343 (E.D.N.Y. 2010) (quoting Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 457 (S.D.N.Y. 2005).

Here, it appears that Colemont's authority went "far beyond that of solicitor of the liability policy." See id. Illinois Union's Agreement[6] with Colemont provides that Colemont:

- must promptly notify Illinois Union if Colemont receives any notice of claims and must cooperate with Illinois Union in the investigation, adjustment, and settlement of claims. (Agreement, § II.B.1.)

- may communicate the terms of the insurance quotations to potential customers if quotations are provided by Illinois Union. (Id., § II.C.1.)

- must collect, account for, and pay premiums on business it writes, even if the premium is not collected from the insured. (Id., § II.A.1.)

- must hold such premiums in a fiduciary capacity for Illinois Union. (Id., § II.B.2.)

---

[6]Erie Painting argues that the Agreement, which it produced during discovery, is inadmissable because it is not authenticated. This argument is wholly without merit and summarily rejected. See Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp., 262 F. Supp. 2d 50, 58 (S.D.N.Y. 2003) ("In this Court's experience, it is unprecedented to have reputable counsel (or any counsel, for that matter) challenge the authenticity of . . . discovery responses [] and documents produced from his client's files."); John Paul Mitchell Sys. v. Quality King Distribs., Inc., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (holding that the act of production itself implicitly authenticates documents).

• must maintain records and make them accessible to Illinois Union upon Illinois Union's request. (Id., § II.B.5.)

• must indemnify Colemont for any violation of this agreement. (Id., § II.C.1.)

While apparent authority "cannot be established by the actions or representations of the agent," Minskoff v. American Express Travel Related Services Co., 98 F.3d 703, 708 (2d Cir. 1996), the Agreement indicates that Colemont's actions – issuing Erie Painting's policy, collecting its premiums, and receiving notices-of-claim – are traceable to the obligations imposed on it by Illinois Union.  Moreover, "it is of no small moment that [the broker] accepted the Acord form from [the plaintiff] . . . on behalf of [the insurer], without objection." See Green Door Realty, 329 F.3d at 290. Nor was this an isolated occurrence: Illinois Union received approximately six claims per month from Colemont. (Pl.'s State., ¶ 92). Indeed, in Green Door Realty, the Second Circuit found that the agency question should proceed past summary judgment because the broker in question accepted the notice-of-claim and there were "several instances" in which the insurer allowed the broker to "accept loss notices on its behalf" previously. 329 F.3d at 290.

There is, however, no evidence that Illinois Union imbued Colemont with the authority to accept notices-of-claim on its behalf, only obligating it to forward those that it did receive. This tends to show a lack of an agency relationship.  See, e.g., Cambridge Realty Co. v. St. Paul Fire & Marine Ins. Co., No. 08 Civ. 7745(WHP), 2010 WL 2399558, at *7 (S.D.N.Y. June 14, 2010) (no agency relationship, in part because "[t]here are no documents showing that St. Paul [the insurer] had authorized Vicinanza Insurance [the broker] to receive notice on its behalf"), aff'd 421 Fed. App'x 52 (2d Cir. 2011); Green Door Realty, 329 F3d at 290 ("On the other hand, there is also evidence in the record that

13

[broker] did not have the authority to accept notices of claims from [] insured."). If anything, the Agreement specifically denies Colemont this authority. (See Agreement, § I.A.)

Although both parties seek a ruling from this Court in their favor as a matter of law, the Second Circuit has held that "[t]he existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment." Minskoff, 98 F.3d at 708; see also Cabrera v. Jakabovitz, 24 F.3d 372, 385-86 (2d Cir. 1994) ("The question of whether an agency relationship exists is a mixed question of law and fact."). Here, as in Green Door Realty, conflicting evidence regarding Colemont and Illinois Union's relationship precludes summary judgment. 329 F.3d at 289 ("[G]iven the conflicting evidence as to whether [broker] was [insurer's] agent based on actual or apparent authority, the District Court erred in concluding that there were no material factual disputes concerning the existence of a principal-agent relationship"); see also Cambridge Realty, 421 Fed. App'x at 56 n. 5 (finding the facts before it insufficient to create a genuine issue of fact, but "not exclud[ing] the possibility that circumstances may exist in which the broker's acceptance of payment for the benefit of the insurer could indicate apparent authority"). Each party's motion on this issue is therefore denied.

## 2.      Timeliness of Illinois Union's Notice to Erie Painting

If the fact-finder were to determine that an agency relationship did exist between Illinois Union and Colemont, Illinois Union would not have disclaimed coverage until 29 days after receiving notice of the Dovas claim.

"An insurer is obligated to give written notice of a disclaimer of coverage 'as soon as is reasonably possible,' N.Y. Ins. L. § 3420(d) (McKinney 2000), measured from the time that the insurer has sufficient information to disclaim coverage in good faith." Webster

ex rel. Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 216 (2d Cir. 2004) (Sotomayor, J.) (citing Ward v. Corbally, 207 A.D.2d 342, 615 N.Y.S.2d 430 (2d Dep't 2001)). "'A failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial.'" U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004) (quoting Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979). The insurer has the burden of demonstrating that any delay was reasonable. First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 69, 769 N.Y.S.2d 459, 801 N.E.2d 835 (2003); U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel, 900 F. Supp. 641, 647 (E.D.N.Y. 1995).

Illinois Union argues that its 29-day delay in disclaiming was reasonable as a matter of law. In support of this proposition, it relies principally on Liberty Insurance Underwriters Inc. v. Great American Insurance Co., No. 09 Civ. 4912 (DLC), 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010), which held, "New York courts have found that a disclaimer of coverage issued within a month after the insurer obtains sufficient facts to form the basis of the disclaimer is, as a matter of law, reasonable." But other courts have found differently. See, e.g., West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co., 290 A.D.2d 278, 279, 736 N.Y.S.2d 34 (1st Dept. 2002) (30-day delay unreasonable); State Farm v. Clift, 249 A.D.2d 800, 845, 671 N.Y.S.2d 843 (3rd Dep't 1998) (possible delay of 25 days presented a question of fact). While seemingly contradictory, the difference is explained by the facts unique to each case. Indeed, the New York Court of Appeals has specifically declined to adopt the bright-line rule on which Illinois Union rests its argument: after recognizing the possible benefits of such a rule, it concluded, "the difficulty with imposing a fixed time

15

period – which the Legislature scrupulously avoided – is that most often the question whether a notice of disclaimer has been sent 'as soon as is reasonably possible' will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage." First Fin. Ins.,1 N.Y.3d at 70. And any lingering doubt about the import of this language is resolved by the Court of Appeals' more recent holding: "we have made clear that timeliness almost always presents a factual question . . . ." Cont'l Cas. Co. v. Stradford, 11 N.Y.3d 443, 449, 900 N.E.2d 144, 148 (2008). Furthermore, "one thing is clear: [] it is the responsibility of the insurer to explain its delay." First Fin., N.Y.3d at 70.

 Despite these clear proclamations from New York's highest court, Illinois Union fails to provide a single factual citation and asserts that a 29-day delay is *de jure* reasonable. As evidenced above, this approach is proscribed by the Court of Appeals.

What is more, it is undisputed that Illinois Union did not conduct an investigation into the claim. Stephen Kamoroff, who oversaw the disclaim process for Illinois Union, testified that the basis on which Illinois Union disclaimed (Erie Painting's delayed notice) was apparent to him when he first saw the notice-of-loss material. (Pl.'s State., ¶ 98; Kamoroff Dep. 32:5-19; Docket No. 45-14.) Thus, the grounds for disclaimer were readily apparent to Illinois Union, distinguishing this case from those on which Illinois Union relies. See, e.g., Liberty Ins. Underwriters, 2010 WL 3629470, at *9 ("Where the grounds for disclaimer are *not* readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage . . ."(quoting City Club Hotel, 369 F.3d at 107 (2d Cir. 2004))) (emphasis added); Lehigh Const. Group, Inc. v. Lexington Ins. Co., 70 A.D.3d 1430, 1432, 894 N.Y.S.2d 299, 301 (2010) (delay of four

16

weeks permissible where insurer conducted an investigation); Webster ex rel. Webster, 368 F.3d at 217 (insurer "mounted an investigation to determine whether it could disclaim coverage"); see also Stratford, 11 N.Y.3d at 449 (length of investigation among the circumstances considered in determining whether a delay is reasonable); First Fin., 1 N.Y.3d at 69 ("[I]nvestigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer.").

Therefore, in accordance with the Court of Appeals' guidance, and considering Illinois Union's lack of investigation into its decision to disclaim, the 29-day delay cannot be deemed reasonable as a matter of law.

Nor, however, is this Court persuaded that these facts are so extraordinary as to render judgment as matter of law in favor of Erie Painting appropriate.  See Allstate Ins. Co. v. Gross, 27 N.Y.2d 263, 270, 317 N.Y.S.2d 309, 265 N.E.2d 736 (1970) (reasonableness of delay a question of law only in "extreme" cases). The delay here was not inordinately long, and Illinois Union has provided a timeline of events explaining its procedure in responding to Erie Painting's claim. Determining whether that procedure and the accompanying 29-day delay was unreasonable is the prerogative of the fact-finder. See Stradford, 11 N.Y.3d at 450.

### 3.    Timeliness of Erie Painting's Notice to Illinois Union

There is no dispute that Erie Painting's policy with Illinois Union requires Erie Painting to provide notice "as soon as practicable" of any occurrence that "may result in a claim." (Policy, § 4.2.a.) It is further undisputed that Erie Painting knew of the accident when it occurred on September 18, 2008, and that Erie Painting did not notify Illinois Union of the accident until January of 2009 – roughly four months later.

Based on this delay, Illinois Union argues that Erie Painting's notification was unreasonably late, and that it is thus relieved from any obligation to indemnify or defend Erie Painting.

"Compliance with the notice requirements of an insurance policy is a condition precedent to coverage." Centrone v. State Farm Fire & Cas., 275 A.D.2d 728, 729, 713 N.Y.S.2d 211 (2d Dep't 2000); see also Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987).  Thus, under New York law, "the insured's failure to provide notice within a reasonable time without a valid excuse for delay constitutes a complete defense to a third-party complaint by the insured to compel the insurer to bear the costs of defense in the underlying action." State of New York v. Blank, 27 F.3d 783, 793 (2d Cir. 1994).

In support of its argument, Illinois Union cites several New York cases where a similar, or even a shorter, delay was found to be unreasonable as a matter of law. See, e.g., Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 440 (2d Cir. 1995) ("Under New York law, delays for one or two months are routinely held 'unreasonable.'"). But Illinois Union's desired conclusion is not as easily reached as it might first seem. In fact, "New York courts have held that the question whether notice was given within a reasonable time may be determined as a question of law [only] when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." Blank, 27 F.3d at 795; see also Hartford Fire Ins. Co. v. Masternak, 55 A.D.2d 472, 474, 390 N.Y.S.2d 949, 952 (4th Dep't 1977) ("It is only when no excuse is offered for delay, or when no credible evidence supports the proffered excuse, that notice will be held untimely as a matter of law"); U.S. Underwriter's Ins. Co. v. Ziering, No.

18

06-CV-1130JFBWDW, 2009 WL 238562, at *6 (E.D.N.Y. Feb. 2, 2009) (citing <u>Deso v.</u> <u>London & Lancashire Indem. Co. of Am.</u>, 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957) (well settled that where mitigating circumstances are offered, the reasonableness of a delay is a question for the jury)).  The burden to demonstrate such an excuse rests with the insured.  <u>Argentina v. Otsego Mut. Fire Ins. Co.</u>, 86 N.Y.2d 748, 750, 655 N.E.2d 166 (1995).

Erie Painting meets that burden: this Court finds a genuine issue of material fact as to whether Bahas had a good-faith belief that Davos would not seek to hold Erie Painting liable.  <u>See</u> <u>id.</u> (excuse for delay can be "insureds' 'good-faith belief' that the injured party would not seek to hold them liable").

First, either Davos or Davos' wife informed Paul Gladwin, who, in turn notified Bahas, that Davos did not intend to file a lawsuit.[7] (M. Bahas Aff., ¶ 22(j), attached as "Ex. D." to Pl.'s Mot. for Summ. J.; Docket No. 45-7.) While this statement alone may not be enough to establish a good-faith belief that Davos did not intend to sue, the existence of other factors establishes that this question cannot be answered as a matter of law. For instance, it appears that Davos initially placed the blame for the accident on himself. He told Leonotis Bahas, Markos Bahas' son, "I fucked up. I did something stupid and I'm embarrassed. I fell, but I'm ok." (L. Bahas Aff., ¶ 25; attached as "Ex. H" to Pl.'s Mot. for

---

[7]This is not impermissible double hearsay as Illinois Union argues. "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Here, the "first level" of hearsay is admissible under Fed. R. Evid. 803(3), which provides that a "statement of declarant's then-existing state of mind (such as motive, intent, or plan)" is "not excluded by the rule against hearsay."

The statement made by Paul Gladwin to Markos Bahas need not fall under an exception because it is not hearsay – "[i]t is well established . . . that statements offered for their effect on the listener are non-hearsay." <u>Smith v. City of New York</u>, 388 F. Supp. 2d 179, 182 n. 2 (S.D.N.Y.2005) (citing <u>United States v. Garcia</u>, 900 F.2d 571, 576 (2d Cir.1990)). Gladwin's statement is offered for its effect on Bahas.

Summ J.; Docket No. 45-13.) This statement is also supported by the facts: there is no dispute that Davos did not use the proper safety equipment when he tried to investigate the strange sound.

It also appears that Davos and Markos Bahas had a friendly, almost familial, relationship. Bahas offered Davos' wife the company credit card for expenses when her husband was hospitalized; he also gave Davos cash – first either $2,000 or $350 (the parties disagree) while Davos was still in the hospital and later, almost $10,000 when Davos informed him that he was struggling to pay his medical bills. Bahas states, "I never would have given any money to Jim or his wife if I knew he would file a lawsuit." (Bahas Aff., ¶ 23.) While his motive for such generosity is questioned by Illinois Union, resolution of such an issue would be improper at summary judgment. Indeed, drawing inferences in Erie Painting favor, these facts could lead a reasonable jury to believe that Markos Bahas did not think Davos would sue.

For these reasons, Markos Bahas' belief that Davos would not sue presents a genuine issue of material fact. See, e.g., Argentina, 86 N.Y.2d at 750 ("The existence of such a "good-faith belief," as well as the question of whether the belief was reasonable, are ordinarily questions of fact for the fact finder"); Cambridge Realty, 2010 WL 2399558, at *7 (quoting Travelers Ins. Co. v. Volmar Constr. Co., 752 N.Y.S.2d 286, 288, 300 A.D.2d 40 (1st Dep't 2002) ("Generally, if 'an excuse or explanation is offered for delay in furnishing notice, the reasonableness of the delay and the sufficiency of the excuse are matters to be determined at trial.'")). Each party's motion for summary judgment is therefore denied.

## IV. CONCLUSION

Of the eight motions pending before this Court, two are granted:  Erie Painting's motion to supplement its discovery materials and Illinois Union's motion to strike the fourth paragraph of the McMicking affidavit. The others are denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 44) is DENIED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 45) is DENIED.

FURTHER, that Defendant's Motion to Strike (Docket No. 50) is GRANTED in part and DENIED in part, in accordance with this Decision.

FURTHER, that Plaintiff's Motion to Supplement Discovery (Docket No. 55) is GRANTED.

FURTHER, that Defendant's Motion to Strike Plaintiff's Reply Memorandum (Docket No. 58) is DENIED.

FURTHER, that Plaintiff's Motion to File an Amended Reply Memorandum (Docket No. 61) is DENIED.

FURTHER, that Plaintiff's Motion to Strike Defendant's Memoranda (Docket No. 62) is DENIED.

FURTHER, that Plaintiff's Motion to File a Sur-Reply (Docket No. 67) is DENIED.

Dated:      June 23, 2012
            Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          Chief Judge
                                          United States District Court

21